FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

MAR 3 1 2005

LUTHER D. THOMAS, CLERK
By: Jh. [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Interland, Inc.

       Plaintiff

v.

William Bunting, et al

       Defendant

CIVIL ACTION NO.
1:04-CV-444-ODE

## ORDER

This case is before the Court on Plaintiff's motion to dismiss [#11], motion to amend [#25], motion to compel further responses to first interrogatories and request for sanctions [#52], and motion to determine the sufficiency of responses, to compel proper responses or deem requests admitted, and request for sanctions [#53].

### I. Facts

The facts of the present matter are more fully described in this Court's order entered April 29, 2004; however, the highlights will be summarized for convenience's sake. Plaintiff/Counterclaim Defendant Interland, Inc. ("Interland") and Hostcentric, Inc. ("Hostcentric") entered into a merger and escrow agreement, whereby Interland acquired Hostcentric. Defendant/Counterclaim Plaintiff William Bunting, et al ("Shareholders's Representative" or "Representative" or "Defendant") is the authorized representative of Hostcentric's former shareholders.

On December 19, 2002, Interland and Hostcentric signed an agreement and plan of merger. During negotiations that occurred

prior to the execution of the agreement and plan of merger, an issue arose concerning the liability remaining under Hostcentric's lease of property in Farmingdale, New York (the "Long Island Lease" or "Lease").  Interland was not interested in becoming the lessee of this property.  Hostcentric represented that the lease could be terminated for approximately $180,000 and it was willing to bear the risk of loss in excess of $180,000 by indemnifying Interland for losses related to the Lease.  Accordingly, Section 2.4(a) of the merger agreement states:

> The parties hereto acknowledge that Hostcentric has abandoned its leased space in Farmingdale, New York, and Hostcentric covenants that it shall use commercially reasonable best efforts to terminate the lease agreement with respect to such space (the "Long Island Lease") prior to closing . . . If Hostcentric terminates the Long Island Lease prior to or subsequent to closing for a cash payment of more than $180,000, the difference between such amount and $180,000 shall be paid by the Surviving Corporation and shall constitute a claim against the Escrow Fund, subject to the right of Interland and Merger Sub to seek indemnification with respect thereto as set forth in Article VIII.

The escrow agreement gave Interland six months from the date of closing to provide the Shareholders's Representative and the escrow agent with notice of any buyer claims for indemnification against the escrow funds.  Any remaining escrow funds were then to be released to the Representative, Bunting.

On June 13, 2003, Interland and Hostcentric closed and made effective the merger and escrow agreement.  At that time Hostcentric had not terminated the Long Island Lease.  By letter of November 11, 2003, Interland told Defendant Bunting that the Representative and certain other former Hostcentric shareholders were working to terminate the lease, but it had not yet been terminated.  On November 19, 2003, because the lease had still not

2

been terminated, Interland provided written notice of its buyer claim in an undefined amount "in excess of $180,000" against the escrow funds.

On December 12, 2003, six months after the closing date of the merger agreement, the Lease remained in effect. Interland declined to give the escrow agent instructions to release any portion of the escrow funds to Bunting. On that same day, Interland provided notice of lease termination to the Lease landlord. On December 17, 2003, the Bunting disputed Interland's November 19, 2003 buyer claim and objected to the escrow agent paying the claimed amount out of the escrow funds.

Interland brought suit seeking a declaratory judgment to the effect that it was entitled to collect the money necessary to terminate the Long Island Lease, and that the escrow funds should not be released to the Representative until the Lease is liquidated. The Representative counterclaimed for injunctive relief and specific performance seeking a portion of the escrow funds and damages resulting from breach of the escrow agreement, breach of the duty of good faith and fair dealing, and breach of fiduciary duty.

## II. Discussion

### 1. Motion to Dismiss

Interland moved to dismiss the Representative's counterclaims III (breach of the duty of good faith and fair dealing), IV (specific performance), and V (breach of fiduciary duty). For the following reasons, the motion is GRANTED.

A complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998).


    a. Breach of the Duty of Good Faith and Fair Dealing

The only basis for Interland's motion to dismiss Count III is its position that Georgia law does not recognize an independent tort claim for breach of the duty of good faith and fair dealing. Stuart Enter. Int'l, Inc. v. Peykan, Inc., 555 S.E.2d 881, 884 (Ga. App. 2001). Defendant rebuts that its claim is not a cause of action in tort, rather for breach of contract; specifically, a breach of the covenant of good faith and fair dealing implied in both the merger and escrow agreements.

Every contract has an implied covenant of good faith and fair dealing in the performance of the terms of the agreement, Camp v. Peetluk, 585 S.E. 2d 704, 708 (Ga. App. 2003), and Georgia law permits a claim for breach of that covenant where a party to the contract exercises discretion in the manner in which it performs under the contract. Id. See also Rogers v. Farmers & Merchants Bank, 545 S.E. 2d 51, 53 (Ga. App. 2001) ("[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good

4

faith."). However, the Georgia Court of Appeals and the United States Court of Appeals for the Eleventh Circuit have held, "the 'covenant' [to perform in good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms _de facto_ when performance is maintained _de jure_. _Stuart_, 555 S.E. 2d at 884 (citing _Alan's of Atlanta, Inc. v. Minolta Corp._, 903 F.2d 1414, 1439 (11th Cir. 1990)). In _Alan's of Atlanta_, the plaintiff did not allege breach of contract, yet sought to bring a claim for breach of the covenant of good faith and fair dealing. The Eleventh Circuit rejected the claim and stated, "the 'covenant' is not an independent contract term." _Alan's of Atlanta_, 903 F.2d at 1429. See also _Stuart_, 555 S.E. 2d at 884; _APA Excelsior III, L.P. v. Windley_, 329 F. Supp. 2d 1328, 1365 (N.D. Ga. 2004) (holding that where no genuine issue of material fact existed as to whether any contract provisions were breached, plaintiffs could not invoke the implied covenant of good faith and fair dealing as a separate cause of action). Here, Bunting asserted that Interland had the power and discretion to terminate the Lease, yet breached the escrow and merger agreements, _i.e._ the contract, and thereby breached the implied covenants, by not promptly terminating the Lease in a commercially reasonable manner, not minimizing or liquidating related termination costs, and by not providing the escrow agent with instructions for allowing the release of escrow funds. Defendant's breach of the implied covenant of good faith and fair dealing is simply a part of its breach of contract claim and thus

5

Interland's motion to dismiss any claimed separate cause of action is GRANTED.

   b. Specific Performance

Defendant Bunting contends this Court should order Interland to provide written instructions to the escrow agent to release the escrow funds, including cash and shares, to him as a remedy for Interland's alleged breach of the merger and escrow agreements. Bunting claims that a monetary judgment will not remedy the harm Interland allegedly caused by not releasing the escrow funds because Interland's failure deprived, and continues to deprive, Hostcentric's former shareholders of the opportunity to control the disposition of their stock.

In general, equitable remedies are not available if legal or monetary damages are sufficient. See Kirkley v. Jones, 550 S.E. 2d 686, 690 (Ga. App. 2001); Lee v. Green Land Co., Inc., 527 S.E. 2d 204 (Ga. 2000); Eickhoff v. Eickhoff, 435 S.E.2d 914, 918 (Ga. 1993), overruled for other reasons. An award of specific performance is only to be had in exceptional circumstances. Kirkley, 550 S.E.2d at 690.

The problem with Bunting's argument is that Interland itself is making a claim to the escrowed property. It is unclear whether Bunting and the other shareholders would be able to pay Interland in the event of an adverse judgment. Therefore, Interland's motion to dismiss count IV is GRANTED.

6

c. <u>Fiduciary Duty</u>

Finally, Interland claims the Representative cannot meet its burden of proving the existence of a confidential or fiduciary relationship.[1]   Interland characterizes its relationship with Defendant as an arms' length transaction that should not be converted into a confidential relationship.

In Georgia, "[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58.   As interpreted by Georgia courts, a confidential relationship is never presumed. <u>N.E. Constr. Co. of W.V.</u>, 298 F. Supp. at 1141.   Previous business relations and the resultant trust are also not sufficient to establish a fiduciary relationship.  <u>Id.</u> <u>See also Albee v. Krasnoff</u>, 566 S.E.2d 455, 459 (Ga. App. 2002) (internal citations omitted) ("The mere fact that one reposes trust and confidence in another does not create a confidential relationship.  In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone."); <u>Kienel v. Lanier</u>, 378 S.E.2d 359, 361 (Ga. App. 1989)

---

[1]  The party asserting the existence of a confidential relationship has the burden of establishing as much.  <u>United States of Am. for the Use and Benefit of Meva Corp. v. N.E. Constr. Co. of W.V.</u>, 298 F. Supp. 1135, 1141 (S.D. Ga. 1969).

7

(finding no confidential relationship because case did not involve "a transaction in which the parties joined together, as partners, promoters, joint venturers, or otherwise, to achieve a common business objective. Rather, the parties were engaged in a transaction with each other in an effort to further their own separate business objectives.").

On the other hand, a fiduciary relationship does exist where one person gives another the authority to manage a business or otherwise control assets, and the other relinquishes similar authority. Gibbs v. Dodson, 492 S.E. 2d 923, 926 (Ga. Ct. App. 1997) (finding a fiduciary relationship where an agreement between the parties established that defendant would take over the authority to manage a business he and plaintiff formed until its closing and plaintiff agreed not to interfere with the management as long as defendant kept him 'reasonably apprised' of the entities operations.").

In the instant matter, Bunting claims that the merger agreement and post-merger relationship established a confidential relationship for two reasons; (1) Interland exercised sole and exclusive control over the termination of the Long Island Lease, and (2) Interland was the required signatory on any joint written instructions to the escrow agent for the release of escrow funds. As a result, Bunting contends, Interland was situated to exercise control over the interests of the former Hostcentric shareholders. Interland disagrees.

Bunting has incorrectly characterized his relationship with Interland. Contrary to Defendant's assertion, Hostcentric did have the authority to terminate the Lease prior to and subsequent

8

to closing according to the merger agreement.[2]  Hostcentric, in fact, attempted to terminate the Lease by offering $500,000 to the landlord, but it was rejected.  Second, the fact that Interland's signature is required on instructions to the escrow agent for the release of escrow funds does not establish a confidential relationship.  The Representative's signature was also required by Section 3.1 of escrow agreement, and a requirement that both parties sign the escrow agent's instructions does not create a confidential relationship or fiduciary duty.

This Court agrees with Interland's position that the parties' relationship was not confidential or fiduciary in nature.  This Court "decline[s] to adopt a holding that would essentially convert every arms' length business transaction into a confidential relationship."  Albee, 255 Ga. App. at 741.[3]  Therefore, Interland's motion to dismiss count V is GRANTED.

2. Motion to amend

Interland seeks to amend its complaint to add an additional claim for indemnification based on Bunting's alleged breach of the covenant to use best efforts to terminate the Long Island Lease.

---

[2]  Section 2.4 of the merger agreement states, "[i]f Hostcentric terminates the Long Island Lease prior to or subsequent to closing for a cash payment of more than $180,000..." (emphasis added).

[3]  In Albee, the plaintiffs' personal financial advisors asked them to invest in a company.  To convince plaintiffs to invest, defendant, the president and 50 percent owner of the company, orally guaranteed that he would be obligated on the loans and told plaintiffs that he would personally manage their money and be involved in management of the company.  Given these facts, the Georgia Court of Appeals still refused to conclude that a confidential relationship existed.  Albee, 255 Ga. App. at 741.

Interland claims that while responding to Bunting's motion for a preliminary injunction, it discovered additional facts showing Bunting committed misconduct during the negotiations of the merger and escrow agreements. Interland claims it has given Bunting notice of its intent to amend the complaint.

Rule 15 states, leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend is routinely granted, absent "undue delay, bad faith, dilatory motive, or undue prejudice." <u>Forbus v. Sears Roebuck & Co.</u>, 30 F.3d 1402, 1404 (11th Cir. 1994). <u>See also Epsey v. Wainwright</u>, 734 F.2d 748, 750 (11th Cir. 1984) (internal citations omitted) ("[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."). As the Court finds that none of these factors are present, the Court GRANTS Plaintiff's motion for leave to amend its complaint.

3. <u>Motion to Compel Further Responses to Plaintiff's Interrogatories and Request for Sanctions</u>

Interland moves to compel further responses from the Representative for interrogatories two (2), three (3), four (4), seven (7), eight (8), nine (9), and eleven (11). It also requests recovery for the costs and attorney's fees associated with bringing the motion.

Interland served its first set of interrogatories and request for production of documents on May 21, 2004. Defendant served its responses and objections to the interrogatories and document requests on June 21, 2004, followed by supplemental responses and

objections on July 15, 2004, and second supplemental responses and objections on September 10, 2004.

    a. <u>Standard of Review Under Rule 33</u>

Rule 33 governs the pretrial discovery process whereby a party to an action may request other parties to answer interrogatories relating to any matters permitted by Rule 26(b)(1). Fed.R.Civ.P. 33(a). The responding party must answer "separately and fully . . . under oath" or object, in which case the party must "state the reasons for objection" with "specificity" and "shall answer to the extent the interrogatory is not objectionable." Fed.R.Civ.P. 33(b). An interrogatory is not objectionable "merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact . . ." Fed.R.Civ.P. 33(c).

As the responding party, Bunting was required to respond fully and completely to the interrogatories. Fed.R.Civ.P. 33(b)(1). A partial answer is not candid and will be deemed evasive, examples will not suffice when a requesting party asks for "all" of anything, and answers such as "including, but not limited to," will not be accepted. <u>Herdlein Tech., Inc. v. Century Contractors, Inc.</u>, 147 F.R.D. 103, 106-07 (W.D.N.C. 1993); Fed.R.Civ.P. 37 (a)(3).

In response to most of Interland's interrogatories, Defendant asserted, with some variation, a general objection that claimed the requests were vague and ambiguous, overly broad and burdensome, sought information protected by the attorney-client privilege or work-product doctrine, sought information that was

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and/or responding to the interrogatories would require Defendant to divulge sensitive, confidential, and proprietary information. [4]    The Court will address the responses according to their objections.


b. <u>General Objections</u>

Bunting prefaced his supplemental responses and objections with eleven[5] general objections.[6] Rule 33 is clear that objections

---

[4] For example, interrogatories two, three, and four asked the Representative to list each person with knowledge of facts which support or refute the allegations set forth in the complaint (interrogatory no. 2), the Representative's affirmative defenses (interrogatory no. 3), and the Representative's counterclaim (interrogatory no. 4). The Representative objected that the requests were vague and ambiguous, overly broad and burdensome, and sought information protected by the attorney-client privilege or work-product doctrine. In response to interrogatory four, the Representative further objected that the information sought was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The Defendant then provided the names and contact information of thirteen people.

In its seventh interrogatory, Interland sought the identity of all persons acting on behalf of the Representative and others related to the Long Island Lease. The Representative objected that the request was was vague and ambiguous, overly broad and burdensome, sought information protected by the attorney-client privilege or work-product doctrine, and the information was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In its second supplemental response Defendant finally stated that it was not aware of specifically who within Hostcentric was acting with respect to the Long Island Lease, but the officers, management team and attorneys could have acted on that behalf. The Defendant then stated it "could (but not necessarily) have included Gregory McKown, Gregory Upham, David Brown, and David Simpson, among others."

[5] Defendant listed eleven objections, however, objections one (1) and nine (9) are the same.

[6] Defendant claims the Interrogatories are objectionable to the extent they seek information that is not relevant to the

should be stated with "specificity." Fed.R.Civ.P. 33(b). Defendant's global objections are improper and the Court will ignore them unless Defendant specifically asserts them in response to an interrogatory.

### c. Lack of Knowledge

Bunting contends that he fully responded to each of Interland's interrogatories by putting forth all the information and individuals' names known to it. Bunting claims that as the representative of former Hostcentric shareholders, not officers, directors or otherwise management for Hostcentric, he did not have substantive involvement in the merger or handling of the Long Island Lease and does not have personal knowledge beyond what he provided in his responses.

---

issues raised and not reasonably calculated to lead to the discovery of admissible evidence; they seek information protected by Rule 26(b)(3), the attorney-client privilege, the work-product doctrine, the accountant-client privilege, or any other protection or privilege recognized by law; they seek to impose burdens upon Defendant beyond those required by Rules 26, 33, or 34; they seek to force Defendant to fully answer the Interrogatories at an early stage of litigation without Defendant having had a full opportunity to investigate Plaintiff's allegations; they seek information and/or documents that are not within Defendant's possession, or purport to require Defendant to provide information on behalf of others, particularly the former stockholders of Hostcentric; a full and complete response would subject Defendant to undue burden and expense; Defendant's response to each interrogatory is based on information and documents currently available and obtained after a diligent search, but it reserves the right to supplement its responses; the interrogatories are vague, ambiguous, or overly broad; they do not set forth the documents or information requested with particularity; and they seek information or documents already in the control, custody or possession of Plaintiff or readily available to it.

Even assuming it is true that Bunting has no further personal knowledge, the Rules require more of him.  Defendant contends that he is not required to speculate under oath about the knowledge of others, and that it is correct; however, he is required to inquire and investigate in order to learn about others's knowledge.  Rule 26 states, "[a] party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case . . ."  Fed.R.Civ.P. 26(a).  Bunting must at least make a reasonable effort to obtain the information requested.  Ranger Ins. Co. v. Culberson, 49 F.R.D. 181, 183 (N.D. Ga. 1969).   This Court makes the ultimate call on what is "reasonable" given the totality of the circumstances.   1983 Amendment to Fed.R.Civ.P. 26 (subdivision (g)).  Defendant is the representative for over two hundred former stockholders, and as such, it is especially important that he satisfy the standard of candor imposed by the Rules.  See Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 616 (5th Cir. 1977).[7]   Not knowing is not good enough.

### d. Privilege

Bunting also improperly asserted the attorney-client or work-product doctrine as an objection.  Rule 26(b)(5) states, "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection

---

[7] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Defendant asserted the privilege to all eleven interrogatories but gave no explanation as to why the attorney-client privilege precluded any response. This is totally unsatisfactory.

Bunting has created a boilerplate objection that does not satisfy the duty of candor imposed by the Rules. The general objection, with some variation, claimed the interrogatories were vague and ambiguous, overly broad and burdensome, sought information protected by the attorney-client privilege or work-product doctrine, sought information that was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and responding to the interrogatories would require Defendant to divulge sensitive, confidential, and proprietary information. On several occasions, this general objection just did not make sense.

For example, in interrogatory nine (9), Interland requested that Defendant describe all facts that support or refute its allegation that the escrow agreement has a mandatory release date, including the identity of all people and documents that support such an allegation. Bunting objected that the request was vague and ambiguous, overly broad and burdensome, sought information protected by the attorney-client privilege or work-product doctrine, and sought information that was neither relevant nor

reasonably calculated to lead to the discovery of admissible evidence. Bunting also claimed his allegation was based entirely on the express language in section 2.2 of the escrow agreement and that no other facts were related to the allegation. These objections are inconsistent; on the one hand, Bunting objected to an interrogatory as vague, overly broad, and seeking privileged information, yet he also claimed that the only basis of the allegation was the contractual language of the escrow agreement.

Another example is Bunting's response to interrogatory eleven (11), which requested that for each of the allegations in the complaint Bunting denied, should identify each person with knowledge related to each of the allegations, including the facts about which that person had knowledge. Bunting objected on the grounds that the interrogatory sought irrelevant information,[8] but conceded that the people previously identified in its responses "may have" knowledge or facts.[9] Oddly, in his response brief in opposition to Interland's motion to compel the same information, Bunting also claimed the interrogatory "goes [to] the heart of the parties' dispute."[10]   It is difficult to imagine how an interrogatory can seek irrelevant information <u>and</u> go to the heart of a dispute. Again, these inconsistent statements raise concerns

---

[8] Defendant's supplemental response did not contest the relevancy of the request.

[9] <u>See</u> n.4, supra.

[10] The fact that an interrogatory goes to a central issue or involves application of law to fact does not make it inappropriate. <u>See</u> Fed.R.Civ.P. 33(c).

about the candor with which Bunting originally responded to Interland's interrogatories.

Each of the responses Interland objected to are similar to the above evasive objection. This suggests that Bunting did not make good faith objections, and he certainly did not make specific objections. Bunting shall amend each response to which Interland objected such that the responses are clear and specific, practically and legally consistent, and incorporate the reasonable duty to investigate that Rules 33 and 26 require. Interland's motion to compel further responses to interrogatories two (2), three (3), four (4), seven (7), eight (8), nine (9), and eleven (11) is GRANTED. The time for a response will be on or within twenty (20) days from the date of this order.

### e. Sanctions

Interland has also requested sanctions for the Defendant's failure to properly respond to its interrogatories. Rule 37 states, if a court grants a motion to compel further responses, "the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless" one of three exceptions applies.[11] Fed.R.Civ.P. 37(a)(4)(A). None

---

[11] Rule 37 states the court shall award expenses "unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."

of the exceptions apply in this case, and Bunting's response to Interland's motion for sanctions does not persuade this Court that his failure to fully respond to the Interrogatories was justified. Therefore, Interland's request for sanctions is GRANTED to the motion to compel further responses to Plaintiff's interrogatories. Interland may to submit an itemization of expenses and attorneys' fees related to the motion to compel within ten (10) days of entry of this Order.

4. <u>Motion to Determine Sufficiency of Response, Motion to Compel Proper Responses to First Interrogatories or Deem Requests Admitted, and Request for Sanctions</u>

Interland has also moved this Court to determine the sufficiency of the Shareholders's Representative's responses to Interland's First Request for Admissions and to compel proper responses or deem certain requests admitted.   Interland also requested attorney's fees and costs associated with brining this motion.

Interland served its first request for admissions on June 1, 2004.   Defendant responded to the request for admissions on July 5, 2004, and served supplemental responses on September 3, 2004. The disputed admissions are one (1), two (2), five (5), six (6), nine (9), ten (10), fifteen (15) through eighteen (18), twenty-six (26) through forty-one (41), forty-three (43) through forty-eight (48), fifty-one (51), fifty-two (52), fifty nine (59) through sixty two (62), sixty-seven (67), and sixty-eight (68).

18

a. <u>Standard of Review Under Rule 36</u>

Rule 36 governs the pretrial discovery process whereby a party to an action may request of other parties admissions regarding the truth of any matter within the scope of Rule 26(b). If a party denies or objects to a request,

> "the reasons [for objection] shall be stated.  The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.  An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.  A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it."

The purpose of Rule 36 is to limit the factual issues in a case, and thereby reduce trial effort and promote efficient litigation. <u>Perez v. Miami-Dade County</u>, 297 F.3d 1255, 1264 (11th Cir. 2002).  In order for its purpose to be fulfilled, the requesting and responding parties should be direct, specific, and not vague or ambiguous in their requests and responses.  The requesting party should set forth requests in a way that they can be answered with a simple admit or deny.  <u>Henry v. Champlain Enter., Inc.</u>, 212 F.R.D. 73, 77 (N.D.N.Y. 2003).  The facts stated within the request should also be carefully detailed.  <u>Id.</u>  The responding party is to either admit or deny, and if it denies, its denial should "fairly meet the substance of the requested admission."  Fed.R.Civ.P. 36(a).  Rule 36, however, does contemplate the need for qualification.  If qualification is

19

necessary, the answering party must specify what part of the request it is not objecting to, and qualify or deny the remainder of the request.  Id.  A general denial is not sufficient. Objections that claim the requests are burdensome or that the document, in effect, "speaks for itself" are not proper. Henry, 212 F.R.D. at 78; Diedrich, 132 F.R.D. at 617.

Rule 36 also imposes upon the responding party a duty to engage in "reasonable inquiry." Fed.R.Civ.P. 36(a). This imposes on the Respondent a reasonable duty to investigate, and some courts contend that it imposes a duty to inquire into the knowledge of anyone who "conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response . . . [R]elevant documents and regulations must be reviewed as well." Herrera v. Scully, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) (internal citations omitted). See also Asea, Inc. v. So. Pac. Transportation Co., 669 F.2d 1242, 1245-47 (9th Cir. 1981); Caruso v. Coleman Co., 1995 WL 347003 at *1 (E.D. Pa. 1995) (citing Diedrich, 132 F.R.D. at 617; Government Employees Ins. Co. v. Benton, 859 F.2d 1147, 1148-49 (3d Cir. 1988)); Beberaggi v. New York City Transit Auth., 1994 WL 18556 at *5 (S.D.N.Y. 1994); Diedrich v. Dept. of Army, 132 F.R.D. 614, 619 (S.D.N.Y. 1990); Uniden American Corp. v. Ericsson, Inc., 181 F.R.D. 302 (M.D.N.C. 1988).

With the above principles as a guide, the Court will examine Interland's objections to the Representative's responses to its Requests for Admissions.

20

b. <u>General Objections</u>

Defendant prefaced its supplemental responses with five general objections.[12] Rule 36 is clear that objections to requests should be addressed to the specific matter.   This "global guard tactic" is improper and the Court will ignore the objections unless they are specifically asserted in response to a request. <u>Henry</u>, 212 F.R.D. at 80.

c. <u>Mirror Image Requests</u>

Most of Interland's requests for admissions were mirror image requests.[13]  For example, request for admission forty-seven (47) stated, "[p]lease admit that Defendant William Bunting knew that Gregory Upham was working to terminate the Long Island Lease during the period of June 13, 2003 to December 11, 2003."  Request number forty-eight (48) stated, "[p]lease admit that Defendant William Bunting did not know that Gregory Upham was working to terminate the Long Island Lease during the period of June 13, 2003 to December 11, 2003."   Bunting denied both requests.   While

---

[12] Defendant claims the Requests are objectionable to the extent they seek to require Defendant to admit matters not within its knowledge; they seek information that is not relevant to the issues raised and not reasonably calculated to lead to the discovery of admissible evidence; they seek information and/or documents that are already in the custody, control, or possession of the Plaintiff, or that is readily available to Plaintiff; they seek information protected by the attorney-client privilege, the work product doctrine, or any other protection or privilege recognized by applicable law; and they seek information that is commercially confidential and proprietary in nature or which constitutes trade secrets.

[13] Only requests twenty-three (23), forty-two (42), and seventy five (75) through ninety-one (91) were not mirror image requests.

Interland claims Defendant's responses were improper, Rule 36 only requires an admission, denial, or objection. Defendant has complied. The accuracy of its responses will be determined at trial. "The implicit message of Rule 37 is . . . that issues obviously subject to dispute should be resolved at trial, not in a discovery motion." Perez, 297 F.3d at 1269. Those responses where Defendant simply admitted or denied a request are sufficient as they are completely within the purview of Rule 36. This includes supplemental responses to forty-two (42) through forty-eight (48), fifty-nine (59), and sixty-one (61).

Nonetheless the Court admits its skepticism that both "sides" of Bunting's denials could be made in good faith. Bunting is advised to reconsider his position, as this conduct is sanctionable if Bunting requires Interland to undertake unnecessary efforts to prepare for and present evidence at trial. Should Bunting desire to amend his responses, he should do so within ten (10) days.

In response to other mirror image requests for admissions, Bunting initially denied the request, then qualified his response. Interland claims these responses also violate Rule 36.

Requests five (5) and six (6) asked Defendant to "admit that, in the Merger Agreement, Hostcentric agreed/did not agree to bear all risk of loss in excess of $180,000.00 for any obligation of Interland to pay a cash payment to terminate the Long Island Lease." Defendant denied both requests and continued, "[b]y way of further response . . ." The Court finds Defendant's response unobjectionable.

Requests sixty-seven (67) and sixty-eight (68) asked Bunting to "admit that, pursuant to the terms of the Merger Agreement, you have/do not have the sole and exclusive authority to act on behalf of the former Hostcentric stockholders with respect to the Merger Agreement and the Escrow Agreement." Bunting denied the request and stated, "the Merger Agreement is a fully-integrated contract the terms of which speak for themselves. Defendants admit that pursuant to Article X of the Merger Agreement, Defendants are the appointed Stockholders' Representatives and granted the sole and exclusive authority to act on behalf of the former Hostcentric Stockholders with respect to the matters specified in Article X after the Closing Date." The Court finds Bunting's response unobjectionable.

Interland also objects to the Representative's responses to thirty-one (31) further requests for admission.[14] The Court will address these according to their objections.

### d. Other Requests

#### 1. Lack of Knowledge; Requests 1, 2, 9, 10, 15, 16, 38, 39

As stated above, "[a]n answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." Fed.R.Civ.P. 36. Again, Bunting seems to have generated a

---

[14] Interland objected to responses one (1), two (2), nine (9), 10, 15-18, 26-41, 43-46, 51-52, and 59-62.

23

boilerplate response which invokes a lack of knowledge.   The
response, with some variation, is:

> As former Hostcentric stockholders who were not officers, directors or
> otherwise part of Hostcentric's management team, Defendants did not
> personally participate in the day-to-day negotiations of the Merger
> Agreement or any attempts to terminate the Long Island Lease.
> Accordingly, after reasonable inquiry, the information known or readily
> available to the Defendants is not sufficient to enable Defendants to
> admit or deny this request.

This Court is suspicious of Bunting's mere recitation of Rule
36(a).  Defendant has failed to allege or specify any reasonable
inquiry it undertook to obtain information that would enable it to
admit or deny the requested admissions.   Many courts require as
much.   See Asea, Inc., 669 F.2d at 1246; Checker Leasing, Inc. v.
Sorbello, 382 S.E.2d 36, 39 (W.Va. 1989); Han v. Food and
Nutrition Serv. of the U.S. Dept. of Agric., 580 F. Supp. 1564
(D.C.N.J. 1984); Princess Pat, Ltd. v. Nat'l Carloading Corp., 223
F.2d 916 (7th Cir. 1955).  However, the Advisory Committee Note
accompanying the 1970 Amendment of Rule 36 states, while "a
reasonable burden is imposed on the parties when its discharge
will facilitate preparation for trial and ease the trial process
. . . Rule 36 requires only that the party state that he has taken
these steps.   The sanction for failure of a party to inform
himself before he answers lies in the award of costs after trial,
as provided in Rule 37(c)."   Fed.R.Civ.P. 36.   Defendant has
risked not making reasonable inquiry before asserting lack of
knowledge as the basis for not admitting or denying Interland's
requests.  However, Defendant's statements that it cannot, after
reasonable inquiry, admit or deny requests one (1), two (2), nine
(9), ten (10), fifteen (15), sixteen (16), thirty-eight (38), and

24

thirty-nine (39) are sufficient.  Defendant is warned, however, that if facts developed during trial or further litigation expose his failure to make a reasonable inquiry before responding to Interland's request, he will be held accountable pursuant to Rule 37(c).

If Defendant chooses to amend his responses on the basis of the above discussion, he may do so within ten (10) days. Following that time, Defendant will not be permitted to amend or withdraw his response to any requests for admissions absent exceptional circumstances.

2. <u>Based on Information and Belief; Requests 17, 18, 26-37, 40, 41, 60, 62</u>

In response to several requests Bunting responded, "[a]dmitted (or denied), based on information and belief." Interland claims the latter phrase is an invalid qualification. This Court agrees.  The responses will be deemed either admitted or denied, as stated, and the additional language stricken from the record.

Defendant answered other requests by saying, "[a]dmitted (or denied), based on information and belief," followed by a sentence essentially rephrasing the request for admission. The additional language is not a proper qualification because it does not "specify so much of (the request) as is true and qualify or deny the remainder." Fed.R.Civ.P. 36.  Therefore, these responses will be deemed either admitted or denied, as stated, and the additional language stricken from the record.

25

3. Vague and Ambiguous; Requests 51 and 52

Requests fifty-one (51) and fifty-two (52) asked Defendant to "admit that Interland gave (or did not give) Greg Upham the authority to enter into final negotiations to terminate the Long Island Lease." Defendant objected that the requests were "vague and ambiguous in that (they did) not specify a time-frame." This is a proper objection. The language following the objection is unnecessary and does not "specifically deny the matter" as Rule 36(a) requires and thus it is stricken from the record.

d. Motion for Sanctions

Rule 37(c)(2) awards recovery of reasonable expenses, including attorney's fees, when a requesting party proves that a responding party improperly failed to admit the genuineness of a document or the truth of any matter requested under Rule 36. [15] While the Court found fault with certain of Defendant's responses, overall the Court finds no violation of Rule 36 and thus Interland's request for sanctions is DENIED.

III. Conclusion

For the above reasons, Interland's motion to dismiss [#11] is GRANTED; Interland's motion to amend the complaint [#25] is GRANTED; Interland's motion to compel further responses to

---

[15] Rule 37(c)(2) states, "[i]f a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."

Plaintiff's interrogatories is GRANTED, its related request for sanctions is GRANTED [#52]; Interland's motion to determine the sufficiency of responses to Plaintiff's request for admissions is GRANTED, the motion to compel proper responses is DENIED, the motion to deem request admitted is GRANTED in part, and the request for sanctions as to the requests for admission is DENIED [#53].

SO ORDERED, this **31** day of March, 2005.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE